# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 20-1031V
UNPUBLISHED

|  |  |
|---|---|
| ZULEIKA APONTE,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 2, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Tetanus, Diphtheria,<br>acellular Pertussis ("Tdap") Vaccine;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Tyler King, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION AWARDING DAMAGES[1]

On August 18, 2020, Zuleika Aponte filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged the Table claim that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving the tetanus, diphtheria, acellular pertussis ("Tdap") vaccine on August 10, 2018. Petition at 1, ¶¶ 2, 9. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although a ruling on entitlement in Petitioner's favor was issued in December 2021, the parties have been unable to resolve damages on their own.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$60,616.48**, **representing $60,000.00 for actual pain and suffering, plus $616.48 for actual expenses.**

## I.      Relevant Procedural History

Not long after the case's initiation, Ms. Aponte filed the medical records and affidavit required under the Vaccine Act. Exhibits 1-7, ECF Nos. 1, 7 (Notice of CD Filing); *see* Section 11(c). On September 4, 2020, the case was activated and assigned to the SPU (OSM's adjudicatory system for attempting to resolve cases deemed likely to settle). ECF No. 9.

On December 23, 2021, Respondent filed his Rule 4(c) Report conceding Petitioner was entitled to compensation, and I issued a Ruling on Entitlement that same day. ECF Nos. 22-23. For approximately three months thereafter, the parties attempted to informally resolve the issue of damages. *See, e.g.*, Status Report, filed Jan. 22, 2022, ECF No. 25. On March 21, 2022, they informed me they had reached an impasse in their damages discussions. ECF No. 28. During the subsequent five-month period, the parties filed their damages briefs, and Petitioner filed supplemental affidavits from his wife and himself. Exhibits 8-10, ECF No. 31; Petitioner's Brief in Support of Damages ("Brief"), ECF No. 34; Respondent's Response to Petitioner's Brief in Support of Damages ("Opp."), ECF No. 36. Neither party filed a responsive brief by the August 25, 2022 deadline. The matter is now ripe for adjudication.

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V,

2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g., Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

### III.     Prior SIRVA Compensation Within SPU[4]

### A.     Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2022, 2,723 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,651 of these cases, with the remaining 72 cases dismissed.

Of the compensated cases, 1,513 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 114 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[5]

1,371 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 1,138 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[6] Agreement |
|---|---|---|---|---|
| Total Cases | *114* | *1,371* | *28* | *1,138* |
| Lowest | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| 1st Quartile | $72,354.81 | $67,472.00 | $90,000.00 | $40,000.00 |
| Median | **$102,479.12** | **$86,927.85** | **$122,886.42** | **$60,000.00** |
| 3rd Quartile | $125,343.45 | $115,000.00 | $161,001.79 | $115,000.00 |
| Largest | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B.   Pain and Suffering Awards in Reasoned Decisions

In the 114 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $100,000.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[7]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). Only one required surgery. Except in one case with an award for pain and suffering slightly below the median amount, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging

---

[6] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[7] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive. Only one petitioner provided evidence of an ongoing SIRVA, and it was expected to resolve within the subsequent year.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions, a PT duration of more than three years, and multiple cortisone injections, were required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## IV.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

The parties agree Petitioner should be awarded $616.48 for past unreimbursed expenses. Brief at 1; Opp. at 10. Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's pain and suffering. Petitioner seeks $80,000.00 for her pain and suffering, and Respondent proposes the lower amount of $60,000.00. Brief at 1; Opp. at 11.

Although Petitioner acknowledges that she suffered only a mild to moderate SIRVA injury, she maintains that the overall duration of her injury was significant – more than three and a half years. Brief at 7-9. She bases this assertion on treatment she pursued three years and seven months post-vaccination, after entitlement had been determined, and following a two year and seven-month gap in treatment. *Id.* at 8.

However, the record in this case shows Petitioner obtained substantial relief

approximately *seven* months post-vaccination, following seven PT sessions during September through November 2018, and nine additional PT sessions at a clinic closer to her new position as a medical technician in December 2018 through March 2019. Exhibits 2, 4. By her PT session on March 19th (approximately seven months post-vaccination), Petitioner reported "very little pain" and was able to demonstrate full flexion without pain and very minimal tightness. Exhibit 4 at 8. It is also important to note that during February and March 2019, Petitioner *rescheduled* more PT sessions than she attended at this second PT clinic – eleven in total. *Id.* at 31-33.

Petitioner returned to the orthopedist for two additional visits in August 2019, but did not pursue the treatment options discussed at the second visit – specifically a cortisone injection and additional PT. Exhibit 5. And x-rays (performed on August 7th) and an MRI (performed on August 10th) revealed findings suggestive of a sprain (x-rays, *id.* at 8) and degenerative changes (MRI, *id.* at 14), rather than due to the vaccine she received.

Thereafter, Petitioner did not seek medical treatment for approximately two years and seven months. When seen by her primary care provider on March 14, 2022, she described left shoulder pain for approximately one year – placing the onset of this later pain as March 2021 – between two and three years post-vaccination. Exhibit 10 at 110. Describing the pain as "discomfort," Petitioner reported that it interfered with her ability to perform push-ups. *Id.* Petitioner has not provided sufficient evidence to link these later complaints of left shoulder pain to the SIRVA injury she suffered in 2018-19.

Additionally, there is substantial evidence showing that the symptoms Petitioner experienced in 2018-19 were not all that severe. When undergoing a physical for her new position as a medical technician at Walter Reed National Medical Center on September 20, 2018, Petitioner expressed "no concerns with her ability to perform" "the physical demands of the job and functional duties assigned." Exhibit 3 at 5. Following a physical examination, Petitioner was assessed as meeting the functional requirements for the position. *Id.* at 12-13. Although I recognize Petitioner's motivation to downplay her symptoms during this interview and examination, her symptoms were mild enough to have passed this test. I find Petitioner experienced a mild SIRVA Injury for approximately seven months which resolved with 16 PT sessions over a period of six months.

Many of the comparable cases proposed by Petitioner, in which claimants obtained awards of awarded between $75,000.00 and $85,000.00, involved SIRVA injuries which lasted several years.[8] And even for those with a duration closer to what Petitioner

---

[8] *Rael v. Sec'y of Health & Hum. Servs.,* No. 16-1462V, 2020 WL 901449, at *1-2 (Fed. Cl. Spec. Mstr. Jan. 28, 2020); *Lucarelli v. Sec'y of Health & Hum. Servs.,* No. 16-1712V, 2019 WL 5889235, at *10-11 (Fed. Cl. Spec. Mstr. Aug. 21, 2019); *Marino v. Sec'y of Health & Hum. Servs.,* No. 16-0622V, 2018 WL 2224736, at *8 (Fed. Cl. Spec. Mstr. Mar. 26, 2018).

experienced - all of which involved pain and suffering awards of $75,000.00 - more significant levels of pain were evident from the record.[9] Thus, I find they are unhelpful comparisons.

In contrast, the comparable cases Respondent offered, in which the petitioners were awarded $60,000.00 to $65,000.00 for their pain and suffering, involve symptoms of a severity and duration comparable to what Petitioner experienced.[10] Specifically, like this Petitioner, the *Murray* and *Dagen* petitioners sought treatment shortly after vaccination and obtained good relief after, respectively, 15 PT sessions spanning six months and 16 PT sessions spanning seven months. *Murray,* 2020 WL 4522483, at *4-5; *Dagen*, 2019 WL 7187335, at *9-10. However, the *Murray* petitioner's injury lasted slightly longer – one year compared to seven months for Petitioner, and he required three cortisone injections. *Murray,* 2020 WL 4522483, at *4-5. And the *Dagen* petitioner suffered more severe levels of pain. *Dagen*, 2019 WL 7187335, at *9-10.

Thus, Petitioner's award should be slightly less than the $65,000.00 awarded those petitioners. I find that a pain and suffering award of $60,000.00 is appropriate in this case.

### Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $60,00.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering.[11] I also find that Petitioner is entitled to $616.48 in past expenses.**

Based on the record as a whole and arguments of the parties, **I award a lump sum payment of $60,616.48, representing $60,000.00 for her actual pain and suffering and $616.48 for her actual unreimbursable expenses, in the form of a**

---

[9] *Goring v. Sec'y of Health & Hum. Servs.,* No. 16-1458V, 2019 WL 6049009, at *10 (Fed. Cl. Spec. Mstr. Aug. 23, 2019); *Pruett v. Sec'y of Health & Hum. Servs.,* No. 17-0561V, 2019 WL 3297083, at *9 (Fed. Cl. Spec. Mstr. Apr. 30, 2019); *Attig v. Sec'y of Health & Hum. Servs.,* No. 17-1029V, 2019 WL 1749405, at *7 (Fed. Cl. Spec. Mstr. Feb. 19, 2019).

[10] *Murray v. Sec'y of Health & Hum. Servs.,* No. 18-0534V, 2020 WL 4522483 (Fed. Cl. Spec. Mstr. July 6, 2020); *Dagen v. Sec'y of Health & Hum. Servs.,* No. 18-0442V, 2019 WL 7187335, at *9-10 (Fed. Cl. Spec. Mstr. Nov. 6, 2019); *Knauss v. Sec'y of Health & Hum. Servs.*, No. 16-1372V, 2018 WL 3432906, at *6-8 (Fed. Cl. Spec. Mstr. May 23, 2018).

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

**check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[12]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.